Okay, the next case we have is Benton v. City of Granite City, 5-15-0241, and it looks like we have Mr. Eric Evans for appellant. You may proceed when you're ready. Thank you. May it please the Court, Counsel. Eric Evans, here. We have Granite City. Your Honors, this case is a case involving the interplay between the Animal Control Act and Section 4-102 of the Illinois Tort of the Indian Act. What happened is, back on September 3rd of 2013, Ms. Benton complained of witnessing from the nursing home that she was at while suffering from dementia, a rehabilitation disease. The Madison County Sheriff's Department engaged in a search for her and was unable to find her. They then called out the local fire department. They began looking for her and brought out heat-seeking lenses looking for her. They were still unable to find her, and due to the cold conditions and the damp conditions, they made a mutual aid called the Granite City, which is the nearest community, with a K-9 officer. K-9 officer Aime, in its anger, responded. After about 15 minutes of looking, the K-9 officer Aime dove into some high grass on the side of the road, at which point Ms. Benton jumped out and said, and the dog had bit her on the wrist. She was transported to the hospital and treated for exposure and injuries to her wrist. Subsequently, she filed suit against both the City of Granite City and the nursing home. Granite City filed a 619 motion to dismiss asserting immunity under 4-102, and the matter was heard, and Judge Crowder denied a motion. Specifically, Judge Crowder in her case said, I recall, that a question before the court was whether the Tort Immunity Act trumped the Animal Control Act. Our position is that was not the issue before the court, and it's not the issue before the court today. Looking back at statutory interpretation, we believe that the courts will look at the old action that when two legislative schemes do not seem completely compatible, they should be interpreted so the median effect can be assigned to each statute. We believe that we're the only person today doing that. If you look at 4-102, it unites police officers from any liability while engaged in police services. Counsel, I'm looking at 4-102 now. Yes. And it says neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection or service. If police protection service is provided for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve a crime, or failure to identify or apprehend criminals. How would you explain to me this situation applies under what that section I just read to you? The courts have on multiple occasions, Your Honor, held that search and rescue operations constitute police services. Plaintiffs that we cited in our brief, in which case the court stated, well, actually, it's an interesting case. I'll give you a little bit of background on it. That was the case where a young lady was out drinking with her friends and got into a fight and wandered off into a field. And the police were called to search for her, and she eventually died of exposure. In that particular case, the family sued, saying the police did not do a correct search. Amongst other allegations were that they did not employ a K-9 officer. At any rate, in that case, the court stated that the village police officers were engaged in police service of searching for a missing person. This service is covered by Section 4-102. A similar killing was come down by the Supreme Court in the DeSmet case, where a lady had run off the road. But wasn't that an allegation of a failure to provide a service? In that particular case? Yes. In the plaintiff's case? In the case you just cited. The plaintiffs don't. That case, the police looked all over for her. They alleged that they didn't do a proper search. They should have used a K-9 officer, a number, a host of issues. They actually searched for her. They just didn't find her in time. At any rate, again, Section 4-102 has been held to... And so, in the DeSmet case... Yes, Your Honor. Justice Karrmeier wrote, did he not, that there was immunity under those circumstances? Yes. Okay. So there was immunity for the dog, for the... The city. The city. Yes. Supreme Court case. Yes. I didn't ask for argument, Your Honor. So, yes. And the Court has been very clear on this. It says that it is an all-encompassing, absolute immunity. The Court has began that very clearly in the Chicago flood cases. It's done so again in the DeSmet case, and most recently in the Riots case, where the Court has repeatedly said, and I quote, If a provision of the Total Immunity Act does not contain an exception, then no such exception exists. According to DeSmet case, if a statute as enacted seems to operate in certain circumstances unjustly or inappropriately, the appeal must be to the General Assembly, not to this Court. The Court has done this over and over and over again and been very clear that if it's an absolute immunity, it means just that. It's an absolute immunity. And the 5th District, if I recall correctly, has held that the Animal Control Act is not a strict liability statute. Correct. Is that true also? It did in both the Beggs case and the Smith case, as has the 1st District, the 2nd District, and the 3rd District. And the Supreme Court basically said the same thing in the Harris case, where they allowed the defense of provocation, which obviously you don't have a defense in a strict liability case. So the only district that is ruled differently is the 4th District in the Wilson case, and they said they have absolutely no authority for doing so. They just simply said it is a strict liability case. And that is the higher premise of their case. So I'm just wondering why we got that question. Is the Animal Control Act a strict liability statute? It seems like the 5th District has addressed that before. They have. And the answer was very clear that no, it is not. But I think it's a red herring because whether it's a strict liability statute or not, it doesn't matter. 4-102 is an absolute immunity. Whether it's willful long contact, strict liability in tort, whether it's negligence, it's not the Negligence Immunity Act. It's the Tort Immunity Act. And whether it's strict liability or not, I don't think really matters. I think the Wilson court was wrong in making the determination that it's a strict liability statute. But even if it is, it's still immunized. There is no liability to the police department for police services. Period. Well, strict liability really is a matter of proof. It takes away issues of proof. Correct. And defense. I mean, you can still have, these two can coexist together. These two statutes, there's nothing wrong with them coexisting. No, and that's what we've argued. We've argued that I don't know how much the court knows about these K-9 officers, but they typically reside with the police officer. He takes them home to his family every night. If, when the police officer or his K-9 officer are off duty or not engaged in police services, they have no immunities. So if the dog, the children have a guest over to their house and the dog bites them, the Animal Control Act applies. If the dog gets out of the yard and bites somebody, the Animal Control Act applies. If it's not engaged as a police officer while conducting police services, the Animal Control Act applies. But when it is working as a police officer engaged in certain activities, in this case, police services, the tort immunity act applies. That way, both acts are giving meaning and effect to take, yeah, the police position would be to get out of the tort immunity act and leave us with absolutely no defenses. Because under any scenario, if we have a dog, if we can't prove provocation or that someone's out of their pursuit, we're basically liable. And that's going to be a huge problem throughout the state. I was going to say, I can't imagine a city having any K-9 units if there's liability. No, I mean, I can tell you right now, granted, they've stopped responding to mutual aid with K-9. It's not replaced one of its three officers. And you guys are seeing the amicus brief by the Illinois District Court. People are interested in this case. There's just, there's going to be unlimited liability because every time the dog bites somebody, the issue of provocation, as the court knows, is a fact issue. And it's going to go before the jury. And as a result, the municipalities are going to incur huge costs. And it's not just dogs. Because I know from the Illinois Municipal League, some of the larger cities, such as Chicago, use horses for crowd control and other issues. Well, if the police officers are out there pushing the crowd around with shields or batons, they're police officers. They're shielding. We should bring a horse in. Well, now we're back in the Animal Control Act. So do we get a tort immunity or not? It will gut out the tort immunity any time an animal is used. And if this exception can be written into it, what other exceptions are out there? You know, I don't know how germane this is, but I was unaware that the dogs were called officers. What is that all about? I can't tell you this in the background, but the dogs are sworn in. They've got certain training requirements. And all the enhancements apply that if you beat, shoot a police officer, we'll engage them. I tell you, this also applies to do the same thing to the dogs. And if the dogs are killed in duty, they have the right to a police burial. There's a very tight bond between the police and the police dogs. And the rationale behind that I can't tell you, but I think it has to do with making sure that the animals aren't hurt while engaging in their services. Okay. I don't think I need to say anything more if you guys don't have any other questions. No? Thank you. Thank you, Mr. Evans. Freeman, when you're ready. May it please the court, counsel. My name is Janelle Freeman, and I'm here on behalf of Ryan Bennett as an ex-friend for Genevieve Southward. Two issues that were addressed specifically, I want to start with the tort immunity question as to the Animal Control Act. If you look at what this court has said is once the four elements of the Animal Control Act are met, liability is mandated. Liability under the Animal Control Act comes from ownership of an animal. It doesn't come from behavior on the part of the police officer that's handling the animal. It's the fact that the city has chosen to own the animal. That's the Wilson theory, isn't it? That is what, yes, Your Honor. That's the 4th District's theory. That was their basis for explaining why the Tort Immunity Act didn't apply. Right. We haven't, the 5th District hasn't adopted that or accepted the Wilson analysis that you're presenting. Yes, Your Honor. Just so the record's clear here. Yes, that's true, Your Honor. Wilson was actually the only existing case regarding the interaction between a police dog fight and the Tort Immunity Act. There are no other cases that exist on this issue. As to that element of ownership, if you look even at the background of the Animal Control Act, it was specifically enacted to take away that requirement from an oath that an owner knew or should have known about its animal's violent propensities before liability could attach. That's why this Court and others have said these are, the four elements are very clear, and those four elements don't require a negligence or a willful and wanted conduct on the part of the owner for liability to be present. It's ownership, the peaceable conduct by the plaintiff, the plaintiff has a right, somewhere they have a lawful right to be, and then an injury by the parties. So the question becomes whether the Tort Immunity Act immunizes against property ownership, because that is what ownership of an animal is in the state of Illinois. We don't recognize them as persons. We recognize them as property. And there's no specific provision of the Tort Immunity Act that immunizes a municipality against property ownership. And so that's why, if you read the 4102, it talks about- No, it's an interesting argument you make, because property is usually inert. Correct. These are animals. These are officers. Not just animals or officers. These are, this is police protection. This is not just an inert wall. And I agree that I think animals in general are a different type of property than other- I might agree with you if it was a pig, but this was a trained animal that was performing a police protection service. And I see your point, Your Honor, but that's not the standard that the Animal Control Act recognizes. Let me focus on the Animal Control Act. The only thing that you've done is you've got the four prongs of what you have to prove, and then that's it. Like you say, it removes the common law issues of knowledge and things like that. But you have this Municipal Tort Immunity Act, which is an affirmative defense that now you've got to talk about. You can't just talk about, you know, what's required to prove. So it's interesting that you talk about this dog or horse or whatever is capable of doing a police service, but you have to consider that in the affirmative defense position. And I understand the point you're making, Your Honor, and I would say if you look at the line of cases under 4102, they almost all involve, in fact, they do all involve police officer behavior as far as where police officers place barricades or where police officers, how police officers conduct a search and what they choose or don't choose to do. That is placing a knowledge factor on a dog that may not exist or that doesn't exist like it does with a human police officer doing that. Well, that's an assumption you're making. These dogs are highly trained. I mean, these dogs are highly trained. Obviously, the dog found your client. Yes. I mean, they're very highly trained for their sensitivities. They have cadaver dogs. I mean, these are not just, like I said, if it was a pig, I might agree with you in some respects, but this was an animal performing a police function, and I'm interested in how you get around Justice Cormier's discussion of that in kind of the context of the Tort Immunity Act where he writes that there is immunity. Well, and under 4102, Your Honor, I don't believe it is the blanket immunity that the appellant puts on. This court has found that you have to read Section 4-102 in connection with the rest of the statute. Specifically, this court, I believe, I'm forgetting the name, I'm sorry, but applied 4-102 in connection with 2-202, which is the willful and unkind conduct. And what this court has found is that that is an exception to this blanket immunity that the appellant is arguing. And in addition, the Supreme Court has also talked about the special duty doctrine as an exception to the blanket immunity provision of 4-102. So it's not really a blanket immunity provision. It's the idea that we're not going to, I guess, immunize every single behavior, because if that was the case, then there wouldn't be a need for Section 2-202. If you look at other types of actions against police officers, you know, this blanket immunity were to apply. Well, I agree with you, but isn't it, as Justice Moore read, where there's certain paragraphs, criteria that are included under the umbrella? I think there are. And then there are, what you're arguing is that there's, not everything's included under those things in the umbrella. There's something outside, there's rain that's not included under the umbrella. That's absolutely correct, Your Honor. That's our argument, is that this kind of umbrella doesn't necessarily include dog ownership. And I think the reason for that, I would argue that, is you look at the cases, the courts consistently said that a public entity is liable, the same as an individual, unless a tort immunity applies. And that the Tort Immunity Act needs to be strictly construed against the public entity. And therefore, if there's not that specific behavior or specific conduct that's immunized by that, then they shouldn't be given that luxury. There was a reason it was codified, and it was to say, we are going to afford you some affirmative defenses, but you don't have the luxury of just doing anything you want. There are limits to that, and those limits put you on the same level as an individual would be. And so my question, you know, when you talk about the highly skilled canine officer, well, on the other side, we have individually owned, highly skilled therapy dogs that provide and maybe do a service. They wouldn't be afforded the same immunities if they were to injure someone while providing a therapy, because it's held by an individual. So the question is, does the tort immunity then provide a public entity that luxury that the public in general doesn't have? And if you strictly construe the Tort Immunity Act, I don't believe that it does. How can you say that when it specifically talks about police and local government? I'm sorry. No, I'm kind of agreeing in your query why. The issue is because of the statute. I also think you've got the Animal Control Act statute, which is, what's the basis for liability under that statute? No, but I mean, again, we go back to the pleading. You've got a pleading that you're going to prove your elements, but then you've got an affirmative defense. We don't have a statute that says therapy dogs get immunity. We do have a statute that says if you're providing a police protection or a police protection service is provided, then under the dismet case, it's immune from liability. I don't know how you get around that. If your argument is true, can you imagine every municipality in this state would stop providing those kinds of services because you want to operate outside the statute? Well, Your Honor, as to that point and their point of public policy, one of the issues they bring up in their brief is the idea that they couldn't use dogs for fleeing suspects or to catch dangerous criminals. But there is a specific statute, tort immunity, that addresses injuries that are resulted from the capture or the chase for those fleeing suspects, and that's 2-106. So there is a specific statute that would immunize municipalities from any of those types of cases for that reason. There is specific statute, and it just says injury. It doesn't have any requirement as far as behavior or anything like that. It's very specific as to injury caused during the pursuit of a fleeing suspect. And so all of those cases, municipalities would be immune in those cases. And in addition, I mean, you still would have to prove there's the provocation issue. One of the requirements under the Animal Control Act is you have to prove you're acting in a peaceable manner. A fleeing suspect is not acting in a peaceable manner. Well, one of the other things that's mentioned is that you have to be in a place where you're lawfully supposed to be, and she was in the weeds. She was within three feet of a public highway. She was acting in public. Yeah, but there's a criteria that you have to be in a place where you're lawfully allowed to be, I think. Yes, Your Honor, there is. And like I said, she was on public property at the time she was. Peaceably conducting himself or herself in any place where he or she may lawfully be. This is a woman who was lost. Yes. Who could have died from exposure. So even if you look at the Animal Control Act, you may have some trouble getting there. And I believe that would be a question of fact then for the trial, the jury, Your Honor. Right. But I could also envision other applications other than search and rescue, and you mentioned the horses. I know that horses and dogs are used for crowd control in lots of situations, and that would be another fairly significant impact if we held that. And I would agree. I think, again, it results in how has the injury occurred because you still have to meet the criteria under the Animal Control Act to be able to recover. So, again, it goes back to that if somebody's rioting and they're using police horses to get the crowd back or to back up the crowd, the question is, are those people acting in a peaceable manner? And there would be a question about that. Justice Chapman's hypothetical, at least under DeSmet, that those horses and dogs would be performing a police service, the same service that the guys with the shields and everything else are performing, except we're doing it with an animal. That's immune under DeSmet. And I would go back to it. It is a very fine line to distinguish. Are you placing liability for the action of the dog or ownership? And it's very different, and I don't think the Animal Control Act requires an action by the owner for liability to attach. It requires ownership for liability to attach, and that's really the question. I don't see the word ownership in the statute. I don't see anywhere where it says ownership. It talks about services. It talks about performing things, not ownership. People own a car, but these are talking about services. So does it really matter whether it's being done by a dog or a horse, as long as it's within the umbrella of these police services? I don't get where ownership, I'm lost on that argument. I apologize. Well, it is a very fine distinction, and I acknowledge what you're saying. The question becomes, under the Animal Control Act, we've clearly said there's no act or omission necessary on the part of the owner for liability to attach. So then the question becomes, well, what's a service? It's an act or omission on part of the municipality. So is the act being immunized or is ownership being immunized? And that's where I think the strict construction argument comes in, which is that it doesn't. And to note, the Animal Control Act was amended subsequent to the Tort Immunity Act being enacted, and it was amended to a broader definition. It went from dog to animal at the time. But specifically under the Animal Control Act, a municipality is still listed as a person under the act. It doesn't say a municipality except if it's a police dog. It's very, if you just plain language, a municipality is an owner under the act. And therefore, that's why we believe the owner should be liable, and that unless there's a property interest, a Tort Immunity Act that applies, that they should not be given that luxury. And so we, again, would believe that based on the current law and statutes, that the trial court was correct in denying their motion to dismiss. Yes. So just to sum up here, we have a difference of opinion between Wilson, 4th District, and the 5th District. As to, the 5th District hasn't ever addressed the issue of whether police dogs are immune under the Tort Immunity Act. Just really whether it's strict liability. Yes. And what this court has, this court hasn't called it, it stopped just shy, what this court has said is liability is mandated if the four elements are met. So there's really- I think we've been pretty clear it's not strict liability. Yes. However. What you've called is mandated liability if the four elements- Well, if you prove all the elements, then- Right. Then it's mandated, but it's mandated without consideration as default on the part of the owner. And so I think that's where this kind of question of, well, what is it really, if it's just a step down from strict liability or not. And really, if you look at the line of cases, part of the issues that's been involved in those cases is under the definition of the Animal Control Act, you can have more than one person that's an owner at the time of the injury. They need to be in possession, isn't that the alternative? That's where the line of cases has gone. Right. Because one of the definitions is the person that has the property interest in the animal, and then another owner is the person who has care and control of the animal. I have a question, counsel. Sure. How would you address the issue of the case that Justice Cates brought up, the dismet case? I- How would you distinguish that case? I would distinguish it because, again, I go back to, if you look at the reasoning in Wilson, not just that they were using a different statute, but the reasoning was that it's mere ownership under the Animal Control Act, it's the basis for liability, not the behavior of the police officer that creates the basis for liability under the Animal Control Act. That's where the distinction lies, is that it's ownership that makes the police department- Is that a distinction without a difference? Yes. What's the difference? What's the difference? Because if behavior requires someone to turn out, those are when we're talking about negligence, willful and wanton conduct, things like that. That's behavior, acts or omissions. The Animal Control Act doesn't require an act or omission on a part of the owner to create liability. It's just ownership. It's the mere ownership. But in this case, this was a rescue situation that saved a woman's life, didn't it? Correct, Your Honor, it did. And during her in the process. We don't know if she would have been found without the use of the police dog one way or the other, honestly. So I don't want to say she wouldn't have been, but I can't say she would either. I think I'm having trouble. I'm having trouble because you are stuck at ownership. Which is the Animal Control Act. Right. But in a pleading situation in a lawsuit, you plead your case, but then the defendant gets to plead their case and they plead an affirmative defense of this immunity statute. I don't see where ownership crosses over and trumps the immunity. Because there's police protection going on. You have two separate acts of pleadings here. Two different things going on. But I don't see where ownership crosses over. And I think the question, Your Honor, is whether ownership is included under the Tort Immunity Act. That's the question in front of the court today. Is it included? And that's why I keep going, I'm going to go back again where it's a strict construction argument that if it shouldn't be read in and if it doesn't exist in there. And that it should be construed against the public entity. But isn't that why we have amicus here? Because of the ramifications of our finding otherwise? I think so. But I think, I don't necessarily think of a finding that under this specific set of facts that you're going to open the floodgates of litigation like they both propose. I mean, the Animal Control Act has been in existence for 60, 70 years now, amended for the last 40. And this is the second case that's come up on an appeal on this issue. And I think those reasons are because, again, it's very fact specific under the Animal Control Act regarding the peaceful conduct and do they have somewhere they have the right to be. And, again, with the other immunities afforded to police officers and to municipalities for the fleeing suspect and those sorts of situations, it's a very narrow window and a very narrow set of facts that's going to impose liability on a municipality for these cases. Okay. Thank you for your time. Thank you. And to the extent that she took additional time, we'll add some to the bubble. A couple minutes, okay? If you have any. Mr. Evans, do you need it? Do you need it? Do you need it, Mr. Evans? Thank you, Mr. Evans. It's nice to have you both here today. This matter will be taken under advisement and an order will be issued in due course.